UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| JOHN PILKINTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:12-cv-0026 |
| | ) | Judge Trauger |
| v. | ) | |
| | ) | |
| DAVID M. HARTSFIELD; CONNIE THOMASON, | ) | |
| as personal representative of MORRIS E. EZELL, | ) | |
| deceased; and BRIDGNORTH PARTNERS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the court is the Plaintiff's Motion for Summary Judgment (Docket No.

14), to which the defendants have responded (Docket No. 18), and the plaintiff has filed a reply

(Docket No. 21). For the reasons discussed herein, the plaintiff's motion will be granted.

## FACTUAL BACKGROUND

This is an action to enforce a promissory note. The plaintiff is the son of the late Bobby

Rudolph Pilkinton and the sole beneficiary of his estate.[1] At the time of his death, Bobby

Pilkinton was the holder of a promissory note ("the note") signed on July 3, 2001 by maker

Bridgnorth Partners ("Bridgnorth"). David M. Hartsfield and Morris E. Ezell (deceased)

executed the note in their capacities as general partners of Bridgnorth. The note is secured by a

---

[1] Unless otherwise noted, the facts are drawn from the Plaintiff's Statement of
Undisputed Material Facts (Docket No. 16), the defendants' responses thereto (Docket No. 19),
and related exhibits. The court draws all reasonable inferences in favor of the non-moving party.
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United
States*, 583 F.3d 916, 919 (6th Cir. 2009).

deed of trust that encumbered certain real property located in Maury County, Tennessee. (Docket No. 1 ¶ 13; Docket No. 4 ¶ 13.) The property was conveyed on approximately July 3, 2001 by Bobby Pilkinton to the defendants. (*Id.*) The note served as partial consideration for the conveyance. (*Id.*)

The note had a principal value of $100,000 and bore interest at the rate of seven percent each year. It was to be paid in ten annual installments of $10,000 plus accrued interest, with the first installment due on July 3, 2002. Subsequent installments were to be paid on the third day of each successive July up until July 3, 2011 - the due date of the final installment. The note was freely transferable and its construction and validity were to be determined according to Tennessee law.

The note also outlined the circumstances that would give rise to a default. For instance, it specified that "the failure of [the maker] to make any payment when due under this or any other obligation to [the holder]" constituted "an event of default." Upon the occurrence of such an event, the holder of the note was authorized, without notice, to "declare all principal and interest provided for under [the note] . . . to be presently due and payable." The holder could also enforce any available remedies under any documents that secured or evidenced the debts of the maker to the holder. In the event of a default, the remaining unpaid principal balance on the note and all expenses due to the holder were, at the holder's option, to bear interest at either 7 percent or "at the highest rate permissible under applicable law."

Upon Bobby Pilkinton's death, the plaintiff received possession of the note through his father's will. The record does not reflect precisely when Bobby Pilkinton passed away. Since acquiring possession of the note, the plaintiff alleges that he has yet to receive a payment from

the defendants. Indeed, he alleges that the defendants have only made one payment on the note

in the amount of $5,000 sometime in 2003. (Docket No. 13 ¶ 16.)

The plaintiff commenced this action on March 8, 2012, naming Hartsfield, Ezell, and

Bridgnorth as defendants, declaring the note to be in default, and demanding full payment.

(Docket No. 1 ¶¶ 2-4, 20.) He also demanded that the unpaid principal bear interest from the date

of the Complaint's filing at the maximum legal rate of 7.25 percent pursuant to Tenn. Code Ann.

§ 47-14-103. (*Id.* ¶ 20.) After Ezell passed away on July 2, 2012, the plaintiff filed an Amended

Complaint on August 20, 2012, substituting Connie Thomason, the executrix and personal

representative of Ezell's estate, as a defendant in this action. (Docket No. 13 ¶ 4.) The Amended

Complaint also reaffirmed that the note was in default, alleged that the default had yet to be

cured, and updated the amount of interest alleged to be outstanding. (*Id.* ¶¶ 17, 19, 21.) The

defendants have not filed an Answer to the Amended Complaint.[2]

The plaintiff has asserted causes of action for debt and breach of contract. (Docket No.

13 ¶¶ 22-27.) He seeks the amounts due and payable on the note, pre-judgment interest,

attorney's fees, and the costs incurred in bringing this action. (*Id.* Prayer for Relief.) A copy of

the note in question has been attached as an exhibit to the Complaint and Amended Complaint

(*see* Docket No. 1, Ex. 1; Docket No. 13 at 6-8), and it is undisputed that the copy is true and

accurate. It is further undisputed that the note constitutes a negotiable instrument and is thus

subject to the provisions of Chapter 3 of Tennessee's Uniform Commercial Code ("TUCC"). *See*

Tenn. Code Ann. § 47-3-102 (noting that Chapter 3 applies to negotiable instruments).

---

[2] While the plaintiff points out the defendants' failure to file an Answer to the Amended Complaint in his summary judgment brief, he does not contend that such a failure entitles him to relief on his claims. (*See* Docket No. 15 at 1, n.1.)

The plaintiff filed the pending motion on November 30, 2012. (Docket No. 14.) On December 20, 2012, the defendants moved to withdraw admissions that the plaintiff alleged had been conclusively established. (Docket No. 17.) In addition, the defendants sought to substitute their untimely responses to the plaintiff's request for admissions. (*Id.* at 1.) The court granted the defendants' motion on May 9, 2013, but ordered the defendants to serve, by May 17, 2013, supplemental responses to two specific requests for admission concerning the authenticity of a November 10, 2009 memorandum purportedly signed by the late Mr. Ezell. (Docket No. 24 at 3-4.) In its Order, the court stated that it would hold its consideration of the current motion in abeyance pending the plaintiff's receipt of the supplemental responses. (*Id.* at 4.) On May 17, 2013, the defendants filed their supplemental responses with the court and represented that service of the responses was made on the plaintiff on May 16, 2013. (Docket No. 26; Docket No. 26-1 at 3.)

## ANALYSIS

### I.      Standard of Review

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Conversely, a moving plaintiff must show that the defendant cannot raise a genuine issue of fact regarding any element

of the relevant claims. In both instances, "[i]n evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II.    The Plaintiff's Motion

The plaintiff contends that the court should enter summary judgment in his favor because the undisputed material facts show that he is entitled to recover on the note free of any defenses asserted by the defendants. (Docket No. 15 at 2-4.) Specifically, he requests summary judgment in the amount of $172,963.70, which he alleges is the total amount owed on the note exclusive of costs and fees. (*Id.* at 4.) For their part, the defendants contend that they have paid the note in full. (Docket No. 20 at 2.) In the alternative, they argue that the applicable statute of limitations precludes the plaintiff from obtaining a full recovery of the outstanding balance. (*Id.* at 2-3.)

Again, it is undisputed that the promissory note at issue in this case is a negotiable instrument governed by Chapter 3 of the TUCC. In order to make out a prima facie case for payment on a negotiable instrument under the TUCC, the plaintiff must show that: (1) the signatures on the instrument are authentic; and (2) that he is a person entitled to enforce the

instrument. Tenn. Code Ann. § 47-3-308(a) - (b). It is clear that the first element has been

satisfied, as there is no dispute between the parties that the copy of the note produced by the

plaintiff is true and accurate. The court thus turns its attention to the second element.

Under the TUCC, a "[p]erson entitled to enforce" an instrument means: "(i) the holder of

the instrument; (ii) a nonholder in possession of the instrument who has the rights of a holder; or

(iii) a person not in possession of the instrument who is entitled to enforce the instrument

pursuant to § 47-3-309 or § 47-3-418(d)," neither of which are at issue here. Tenn. Code Ann. §

47-3-301. The plaintiff argues that he is entitled to enforce the note under the second prong of

the aforementioned definition. (Docket No. 15 at 3.) Specifically, he contends that he acquired

the right to enforce the note by virtue of obtaining it as the sole beneficiary under his father's

will. (*Id.*)

The TUCC provides that the "[t]ransfer of an instrument, whether or not the transfer is

negotiated, vests in the transferee any right of the transferor to enforce the instrument." Tenn.

Code Ann. § 47-3-203(b). In turn, "[a]n instrument is transferred when it is delivered by a person

other than its issuer for the purpose of giving to the person receiving delivery the right to enforce

the instrument." Tenn. Code Ann. § 47-3-203(a). The undisputed record evidence shows that

Bobby Pilkinton was the holder of the note at the time of his death.[3] Indeed, at that time, he

possessed the note, which was payable to him. *See* Tenn. Code Ann. § 47-1-201(21) ("Holder

means the person . . . [i]n possession of a negotiable instrument that is payable . . . to an

identified person that is the person in possession"). The record also demonstrates that the

plaintiff, as the sole beneficiary of his father's estate, received possession of the note by virtue of

---

[3] Bridgnorth was the issuer of the note. *See* Tenn. Code Ann. § 47-3-105 ("'Issuer' . . . means a maker . . . of an instrument").

his father's will. Given these circumstances, the court finds that the note at issue was transferred by Bobby Pilkinton (the note's holder) to the plaintiff for the purpose of giving him the right to enforce the note. Moreover, by virtue of this transfer, the plaintiff obtained any right his father had as the note's holder to enforce it. *See* Tenn. Code Ann. § 47-3-203(b). Thus, the plaintiff is a nonholder in possession of the note who has the rights of a holder and, as such, is a person entitled to enforce the note for purposes of Tenn. Code Ann. § 47-3-301.

Having proved both elements of the prima facie case, the TUCC provides that the plaintiff is entitled to payment, unless the defendants are able to prove one of their defenses. *See* Tenn. Code Ann. § 47-3-308(b). In their opposition brief, the defendants first contend that they have satisfied their obligation under the note in full. (Docket No. 20 at 2.) To support this contention, they rely on an affidavit executed by defendant Hartsfield. (*Id.*)

According to Hartsfield, the repayment of the note occurred in several installments. (Docket No. 20-1 ¶ 6.) He asserted that when a subdivided tract on the encumbered real property was sold, an unstated portion of the sale proceeds would be paid to Bobby Pilkinton. (*Id.*) In some instances, the payment was made via a settlement check from the closing attorney, although on most occasions, Bobby Pilkinton was paid in cash by Ezell either before or shortly after the aforementioned sale. (*Id.*) Hartsfield asserts that he was told on several occasions by Ezell that Bobby Pilkinton preferred to be paid in cash and that Ezell would accommodate his request. (*Id.*) Hartsfield further states that, on or shortly after the closing date of the sale of a subdivided tract, Bobby Pilkinton would execute a partial release, allegedly evidencing the release of the lien of his deed of trust as to the tract being sold. (Docket No. 20-1 ¶ 7.) Hartsfield asserts that Mr. Pilkinton would only grant a release after receiving some payment from the sale of the tract. (*Id.*)

Hartsfield's affidavit does not constitute probative evidence on the issue of repayment. While it alleges that the note was repaid in several installments, it fails to explain when such installment payments were made and in what sums. It also fails to explain how Hartsfield has personal knowledge of the methods by which Bobby Pilkinton allegedly received payment on the note. Indeed, his affidavit states that those payments were made by other individuals. Even more fundamentally, the defendants have failed to supplement Hartsfield's affidavit with any documents reflecting that the note has been repaid. The defendants have similarly failed to introduce into the record any authenticated copies of the releases allegedly made by Bobby Pilkinton after receiving some form of payment from the sale of a subdivided tract. In any event, such documents would presumably only show Pilkinton's partial release of the encumbered real property securing the note. It is unclear how such releases would also demonstrate the receipt of any installment payments made by the defendants. In light of the foregoing, the court finds the defendants' repayment defense to be unavailing.

However, the same cannot be said of the statute of limitations defense. Under Tenn. Code Ann. § 28-3-109, an action to enforce a note must be brought within six years after the cause of action accrues. Tenn. Code Ann. § 28-3-109(a)(3); *Consumer Credit Union v. Hite*, 801 S.W.2d 822, 824 (Tenn. Ct. App. 1990). When, like here, the action is to enforce an installment note, "the law is well settled that the cause of action accrues on each installment when it becomes due, and that the statutory period begins to run from that moment on that installment." *Hite*, 801 S.W.2d at 824. Under this analysis, the plaintiff can only recover those installments that became due within the six years that preceded March 8, 2012 - the date this action was filed. Again, the note provided that the first installment was due on July 3, 2002 and that subsequent installments were to be paid on the third day of each successive July up until July 3, 2011. Thus, six

installments became due within the applicable six-year period - namely, those installments due between July 3, 2006 and July 3, 2011. Any attempt to recover the four installment payments that became due between July 3, 2002 and July 3, 2005 is necessarily time-barred.

In his reply brief, the plaintiff argues that the defendants waived the statute of limitations defense. (Docket No. 21 at 5.) This argument is premised on a memorandum purportedly signed by the late Mr. Ezell on November 10, 2009. (Docket No. 15-2 at 16.) This memorandum states the following:

> This is in reference to a property that I purchased from Bob (Bobby R) Pilkinton on July 5, 2001. The contract shows the conditions of sale and what took place at that time. However, Mr. Pilkinton verbally changed the agreement as follows: after 2002, I was not required to pay any principal or interest until called for. No payment has been called for and, accordingly, I have made no payments on principal or [i]nterest from 2003 to date.
>
> Mr. Pilkinton has no family kinship to me.

(*Id.*) The memorandum is then signed by "Morris Ezell (DBA Ezell & Hartsfield)." (*Id.*)

At the time the plaintiff moved for summary judgment, he contended that the genuineness of the memorandum was deemed admitted due to the defendants' failure to timely respond to his requests for admission concerning the document's authenticity. (Docket No. 15 at 5-6.) However, the court granted the defendants' motion to withdraw those admissions on May 9, 2013 and, pursuant to the court's Order, the defendants served supplemental responses to the two specific requests for admission concerning the authenticity of the memorandum in question on May 16, 2013. In those supplemental responses, the defendants denied the plaintiff's request to admit that the copy of the memorandum upon which the plaintiff relies "is an accurate facsimile of an identical original executed without fraud or duress on or about November 10, 2009 by" the

late Mr. Ezell.  (Docket No. 26-1 at 1.)  They also denied the plaintiff's request to admit that

Ezell executed the original document in his capacity as a member of Bridgnorth.  (*Id.*)  Again, in

its order granting the defendants' motion, the court notified the parties that it would hold its

consideration of the plaintiff's summary judgment motion in abeyance pending the plaintiff's

receipt of the supplemental responses.  Nonetheless, since receiving those responses, the plaintiff

has not offered any additional evidence establishing the memorandum's authenticity.  Because

the memorandum has not been properly authenticated, it is inadmissible, and the plaintiff's

waiver argument must accordingly be denied.  *See* Fed. R. Evid. 901(a) ("To satisfy the

requirement of authenticating or identifying an item of evidence, the proponent must produce

evidence sufficient to support a finding that the item is what the proponent claims it is.")

In sum, summary judgment will be granted to the plaintiff on his claim to recover on the

July 3, 2011 promissory note.[4]  However, the plaintiff's recovery will be limited to the six

installment payments that became due between July 3, 2006 and July 3, 2011, as the due dates of

the remaining four installment payments fall outside the applicable six-year statute of limitations.

Given the court's rulings, the plaintiff will be given until June 14, 2013 to file an affidavit setting

forth a revised figure reflecting the total sum of principal and interest he seeks to recover under

the note.  The defendants shall file any objection to the amount claimed by the plaintiff by June

21, 2013, after which the court will enter its judgment.

## CONCLUSION

---

[4] Having granted summary judgment to the plaintiff on his claim to enforce the note, the court need not address the plaintiff's corresponding breach of contract claim, which is based upon the same underlying conduct - that is, the defendants' failure to pay the amounts owed under the note.  (*See* Docket No. 13 ¶¶ 25-27.)

Based on the foregoing, the Plaintiff's Motion for Summary Judgment (Docket No. 14) will be **GRANTED**.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge