UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JOHN PILKINTON,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID M. HARTSFIELD; CONNIE THOMASON,<br>as personal representative of MORRIS E. EZELL,<br>deceased; and BRIDGNORTH PARTNERS,<br><br>    Defendants. | Case No. 1:12-cv-0026<br>Judge Trauger |

## MEMORANDUM AND ORDER

On June 3, 2013, the court issued a Memorandum Opinion granting the Plaintiff's Motion for Summary Judgment (Docket No. 14) on his claim to recover on a July 3, 2001 promissory note ("the Note") having a principal value of $100,000 and bearing interest at the rate of seven percent each year.[1] (Docket No. 27.) However, in doing so, it limited the plaintiff's recovery to six of the ten annual principal installment payments of $10,000 due under the Note. (*Id.* at 10.) Specifically, it held that he could only recover those six installments that became due between July 3, 2006 and July 3, 2011, as the due dates of the remaining installments fell outside the applicable six year statute of limitations. (*Id.*) In light of this ruling, the court ordered the plaintiff to file an affidavit setting forth a revised figure reflecting the total sum of principal and interest due and recoverable under the Note. (Docket No. 28.)

On June 14, 2013, the plaintiff timely filed a declaration from his counsel, Steven A.

---

[1] A more thorough recitation of the factual background underlying this case appears in the court's June 3, 2013 Memorandum Opinion.

1

Nieters of the law firm Leader, Bulso & Nolan PLC ("Nieters Declaration"), in support of his damages claim. (Docket No. 29.) The declaration contains a revised calculation of $97,893.36 in principal and interest recoverable under the Note through June 24, 2013. (*Id.* ¶ 3.) It also requests reasonable attorney's fees in the amount of $15,578.25 and costs of $3,151.75 pursuant to the Note's express provisions.[2] (Docket No. 29-1.) Finally, the Nieters Declaration makes a request for $15,000 in estimated costs to collect upon the judgment in this case. (Docket No. 29 ¶ 10.) In sum, the plaintiff seeks a total damages award of $131,623.36, along with continuing interest of $11.92 per day to begin after June 24, 2013[3] and run until the date that a judgment is entered in this case.[4] (*Id.* ¶ 11.) The defendants timely filed their objections to the declaration on June 21, 2013. (Docket No. 30.)

I.  **Principal and Interest**

At the outset, the court notes that the defendants do not object to the calculation of principal and interest shown in Exhibit 1 of the Nieters Declaration. Nonetheless, in performing its own review of the calculations, the court has discovered a significant computational error contained therein. This error involves the calculation of simple interest between July 3, 2006 and

---

[2] Specifically, the Note states that the "[m]aker . . . agree[s] to pay reasonable attorney's fees and all court and other costs that Holder may incur in the course of efforts to collect the debt." (Docket No. 1-1.) In its June 3, 2013 Memorandum Opinion, the court noted that the plaintiff was the Note's holder and defendant Bridgnorth Partners was its maker. (Docket No.27 at 1.)

[3] This date corresponds to the first business day following the deadline for the defendants to file their objections to the damages sought by the plaintiff.

[4] The per diem interest of $11.92 corresponds to the formula interest rate (7.25%), applicable under the Note's default provision and Tenn. Code Ann. § 47-14-105. As the plaintiff notes, the formula rate announced by the Tennessee Department of Financial Institutions has been 7.25% at all relevant times. *See* https://news.tn.gov/taxonomy/term/73 (last visited July 2, 2013).

July 3, 2011 attributable to the six annual installment payments totaling $60,000 that are recoverable under the Note. As the court previously stated, the principal value of the Note is to bear interest at the rate of seven percent each year. Seven percent of the $60,000 in principal that is recoverable here equals $4,200. In Exhibit 1 of the Nieters Declaration, interest during the aforementioned time period is calculated to be $29,400. (Docket No. 29-1.) However, that figure reflects the amount of simple interest attributable to seven, rather than six annual installment payments. A reduction of $4,200 from the $29,400 figure is thus warranted. With this change, the court will award the plaintiff $93,693.36 in total principal and interest through June 24, 2013. An additional $95.36 in interest will be awarded to reflect the eight days that have run since June 24, 2013 to the date of this Memorandum and Order.[5]

## II.     Attorney's Fees and Incurred Costs

The defendants primarily direct their objections to the reasonableness of the attorney's fees sought by the plaintiff. (Docket No. 30 at 1.) Specifically, they object to the fact that the plaintiff's case was staffed with three attorneys from Leader, Bulso & Nolan. (*Id.*) Pointing to the billing statements contained in Exhibit 2 of the Nieters Declaration, they argue that all three attorneys performed similar tasks on multiple occasions, such as preparing for the Initial Case Management Conference held on June 4, 2012 and having multiple internal discussions about case developments. (*Id.* at 2.) They also contend that, because the plaintiff only recovered 60% of the total principal value of the Note due to the applicable statute of limitations, the court

---

[5] To arrive at this figure, the court multiplied the $11.92 per diem figure corresponding to the formula rate by eight, which represents the number of days that have elapsed since June 24, 2013.

3

should impose a similar proportional adjustment on the request for reasonable attorney's fees. (*Id.* at 3-4.)

In diversity cases, the determination of attorney's fees and costs are governed by state law. *Hometown Folks, LLC v. S & B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011). Where, as here, a contract provides for reasonable attorney's fees and costs, "[t]he parties are entitled to have their contract enforced according to its express terms." *Wilson Mgmt. Co. v. Star Distrib. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988). The Tennessee Supreme Court has noted that the appropriate factors to consider in determining a reasonable attorney's fee include:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved and the results obtained;
>
> (5) The time limitations imposed by the client or by the circumstances;
>
> (6) The nature and length of the professional relationship with the client;
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) Whether the fee is fixed or contingent;
>
> (9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
>
> (10) Whether the fee agreement is in writing.

*Wright ex. rel. Wright v. Wright*, 337 S.W.3d 166, 176-77 (Tenn. 2011); *see also* Tennessee Rule of Professional Conduct ("RPC") 1.5(a). These factors are not exclusive and each factor may not be relevant to every case. RPC 1.5, cmt. 1. Moreover, while a review of these factors should guide a court's analysis, "ultimately[,] the reasonableness of the fee must be based upon the particular circumstances of the individual case." *White v. McBride*, 937 S.W.2d 796, 800 (Tenn. 1996).

Before delving into an analysis of the relevant *Wright* factors, the court first addresses the defendants' objection concerning the staffing of this case by the plaintiff's counsel. It is true, as the defendants note, that the firm representing the plaintiff in this matter, Leader, Bulso & Nolan PLC, staffed the case with three attorneys: Eugene N. Bulso, Jr., Steven A. Nieters, and Paul J. Krog. However, the billing records attached to the Nieters Declaration demonstrate that the attorney commanding the highest hourly rate of $350, Mr. Bulso, only devoted 4.5 hours to this case, which constituted 5% of the firm's 86.85 total billable hours on the matter. (Docket No. 29-2 at 1.) The attorney with the next highest hourly rate of $250, Mr. Nieters, worked 19.5 hours, which represented 23% of the hours billed. (*Id.*) Finally, the attorney with the lowest hourly rate of $145, Mr. Krog, accounted for the lion's share of the billable hours on this matter, as he spent 62.85 hours or 72% of the hours billed. (*Id.*) Given this breakdown, the court fails to see how the staffing of this case by the plaintiff's counsel was unreasonable.

Nevertheless, having reviewed the billing records relating to the June 4, 2012 Initial Case Management Conference, the court questions the reasonableness of the total number of hours collectively billed by the plaintiff's counsel in connection with this fairly routine event. The Case Management Order issued by the court was brief (only three pages long) and did not

reference any uniquely complex issues affecting the management of this case. However, in light of its 40% reduction to the plaintiff's fee request, *see infra* at p.7, the court need not make a specific adjustment to the fees sought in connection with this event. As for the time billed by the plaintiff's counsel to discuss case developments and strategy, the court's review of the billing records has not revealed anything out of the ordinary. Nor have the defendants identified any specific billing entries as being particularly egregious.

The court now turns its attention to consider those factors outlined in *Wright* that have relevance to the instant case. While the defendants do not challenge the hourly rates charged by the plaintiff's law firm, the court finds, based on its experience with this firm and its familiarity with the rates charged by other comparable firms within this judicial district, that the rates charged in this matter were reasonable. Moreover, the court also acknowledges that the plaintiff was counseled by experienced and reputable attorneys who diligently prosecuted this case through the summary judgment stage and obtained a favorable ruling for their client.

Nonetheless, the court notes that this was not a terribly complex case. Indeed, as the plaintiff proclaimed in the opening salvo of his summary judgment brief, "[t]his is a simple action on a simple promissory note." (*See* Docket No. 15 at 1.) The case did not present any novel legal questions, but instead hinged on a straightforward application of Chapter 3 of the Tennessee Uniform Commercial Code governing negotiable instruments and the well-settled statute of limitations on actions to enforce an installment note. Nor did it involve complex and wide-reaching discovery. Indeed, the defendants note that they did not serve written discovery on the plaintiff and that neither party took any depositions. (Docket No. 30 at 2.) In addition, when examining the results obtained in this litigation, the court observes that, while the plaintiff

demanded payment of the Note's total principal value of $100,000 plus interest, his recovery was ultimately limited by the statute of limitations to $60,000 plus interest.

Focusing on the amount involved in this litigation and the results obtained, the defendants urge the court to proportionally adjust any award of reasonable attorney's fees to match the ratio of the plaintiff's success to what he actually demanded. (Docket No. 30 at 4.) Taking into account all of the circumstances of this case, the court believes that such an adjustment is warranted. Because the plaintiff recovered 60% of the total principal value of the Note, the court will similarly award reasonable attorney's fees equaling 60% of the requested $15,578.25, which yields a revised sum of $9,346.95. The Sixth Circuit previously approved of a Tennessee district court's use of this methodology in fixing a reasonable attorney's fee award in a case invoking diversity jurisdiction. *See Hometown Folks, LLC*, 643 F.3d at 536 (noting that "the district court did not err in placing primary reliance on the ratio of Hometown's success to what it claimed in calculating an attorneys' fee award"). Moreover, the court believes that the adjusted fee award strikes a reasonable balance in compensating the plaintiff's counsel for its diligent prosecution of this case to a favorable outcome, while also taking into account the less than full recovery obtained in this fairly straightforward matter.

The plaintiff also seeks to recover the costs incurred by his counsel in prosecuting this case thus far. While the defendants do not appear to directly challenge the reasonableness of the incurred expenses sought, the court believes that, in light of the foregoing discussion, a similar adjustment should be made. Therefore, the court will award 60% of the requested $3,151.75 in incurred costs, which yields a revised sum of $1,891.05.

### III. Estimated Collection Costs

Finally, the defendants have raised an objection to the $15,000 in estimated collection costs sought by the plaintiff's counsel. (Docket No. 30 at 4.) According to the Nieters Declaration, this amount is a reasonable estimate of the costs necessary to collect upon the judgment in this case, given the need for asset discovery and for working through the Tennessee Probate Court.[6] (Docket No. 29 ¶ 10.) The defendants object to this request as being speculative and note that awarding estimated collection costs now may give the plaintiff's counsel an unearned windfall. (Docket No. 30 at 4.) This objection is persuasive. Indeed, the court is not inclined to award such a large sum of estimated costs that have yet to be incurred. Accordingly, this specific request will be denied at this time. Of course, nothing here precludes the plaintiff from seeking, at a later time, recovery for the costs that were actually incurred in collecting upon the judgment in this case.

---

[6] Both of the individuals who executed the Note in question on behalf of Bridgnorth Partners, David M. Hartsfield and Morris E. Ezell, are now deceased. (*See* Docket Nos. 10 and 31.) Mr. Ezell passed away on July 2, 2012 (Docket No. 10), while Mr. Hartsfield recently passed away on June 21, 2013 (Docket No. 31).

## **CONCLUSION**

Based on the foregoing, the plaintiff is hereby **AWARDED** damages in the sum of $105,026.72. This total damages award consists of the following components:

| | |
|---|---|
| Principal and Interest Through 6/24/13: | $93,693.36 |
| Per Diem Interest at $11.92 after 6/24/13: | $95.36 |
| Attorney's Fees: | $9,346.95 |
| Incurred Costs: | $1,891.05 |
| **Total:** | **$105,026.72** |

Entry of this order shall constitute the judgment in this case.

It is so Ordered.

Enter this 2nd day of July 2013.

ALETA A. TRAUGER
United States District Judge